```
             IN THE UNITED STATES DISTRICT COURT
              FOR THE SOUTHERN DISTRICT OF OHIO
                        EASTERN DIVISION
```

**STACIE GROTH,**

       **Plaintiff,**

  vs.                                                   Civil Action 2:13-cv-1238
                                                          Magistrate Judge King

**CENTURYLINK DISABILITY PLAN,**

       **Defendant.**

<u>**OPINION AND ORDER**</u>

     This is an action under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1132 ("ERISA"), in which plaintiff seeks recovery of short-term disability benefits under an employer-sponsored plan.  This matter is now before the Court, with the consent of the parties pursuant to 28 U.S.C. 636(c), for consideration of the parties' cross motions for judgment on the administrative record.  *Plaintiff's Motion*, ECF 18; *Defendant's Motion*, ECF 20.  For the reasons that follow, *Plaintiff's Motion*, ECF 18, is **GRANTED**.  *Defendant's Motion*, ECF 20, is **DENIED**.

**I.    Background**

     Plaintiff Stacie Groth began her employment with CenturyLink on June 16, 2008.  *Administrative Record*, ECF 17, *PAGEID* 110 (hereinafter *A.R. PAGEID* ___").  Plaintiff was employed as a "Provisioning Technician 1," *A.R. PAGEID* 303, and she was a participant in the CenturyLink Disability Plan (the "Plan"), which is sponsored by CenturyLink, Inc.  *Answer*, ECF 12, ¶ 1.  "The Plan has given the Plan Administrator discretionary authority to, among other things,

determine eligibility for benefits, construe the terms of the plan and decide appeals." *Stipulation Regarding Standard of Review*, ECF 19, ¶ 1.  "The Plan Administrator has delegated its authority to a Third Party Administrator, The Reed Group ('TPA' or 'Reed').  Reed is also sometimes referred to as CenturyLink Disability Services ('CDS').  Reed determines eligibility for benefits, interprets the plan and decides appeals but is not responsible for paying benefits."  *Id*. at ¶ 2.

On November 5, 2012, plaintiff applied for short-term disability benefits under the Plan in connection with a planned absence from October 31, 2012, through "the end of the year."  A.R. PAGEID 110, 119.  Plaintiff indicated that she was disabled due to mental health issues, fibromyalgia, and stress.  A.R. PAGEID 118.  Plaintiff identified Jacob Wolf, M.D., as her treating physician and noted that she had been referred to a pain specialist and therapist/counseling.  A.R. PAGEID 119.

Plaintiff was informed by the TPA when she filed for benefits that she had until November 20, 2012, to provide sufficient medical documentation to support her absence.  *Id*.  The TPA sent a fax to Dr. Wolf on November 6, 2014, asking that Dr. Wolf provide plaintiff's medical records and a completed "Health Care Provider's Statement of Disability" by November 12, 2012.  A.R. PAGEID 121, 291.  Despite letters and telephone calls to plaintiff and to Dr. Wolf, A.R. PAGEID 124-25, 302, 318-19, the TPA had not received any medical records by November 28, 2012.  The TPA denied plaintiff's application for short-term disability on November 28, 2012, because it had "not been supplied with any medical information to substantiate you are

2

Disabled." *A.R. A.R. PAGEID* 272-73.

The TPA received a completed health care provider statement from Dr. Wolf on November 29, 2012. *A.R. PAGEID* 126, 293. Plaintiff was notified of that fact the following day and was advised that she had the right to appeal the denial of benefits. *A.R. PAGEID* 126. Plaintiff submitted a written notice of appeal on November 30, 2012. *A.R. PAGEID* 127, 289.

The TPA sent plaintiff a letter on December 6, 2012, indicating that it had received her notice of appeal. *A.R. PAGEID* 106-07. The TPA informed plaintiff that the only medical evidence in the record was Dr. Wolf's health care provider statement, and advised her that additional evidence could be submitted. *Id*. The TPA subsequently received a letter from plaintiff's counselor, Barbara Harris, LISW; *A.R. PAGEID* 130, 270; Dr. Wolf's treatment records; *A.R. PAGEID* 131-32, 245-64; and medical records from Powell Family Medicine, which are duplicates of Dr. Wolf's records. *A.R. PAGEID* 219-31. On December 26, 2012, plaintiff was informed that no records had been received from her psychiatrist or pain management specialist and that her case could be tolled for 45 days in order to permit her to submit additional medical evidence. *A.R. PAGEID* 130. On January 7, 2013, plaintiff informed the TPA that she had not treated with a psychiatrist and that, although she had an appointment to see a pain management specialist on January 22, 2013, she did not want to toll her case. *A.R. PAGEID* 131.

The TPA affirmed the denial of short-term disability benefits on January 18, 2013. *A.R. PAGEID* 177-82. Plaintiff filed this action on December 13, 2013.

3

**II.   Evidence of Record**[1]

Plaintiff treated with Dr. Wolf on September 28, 2012, for depression and a cough. *A.R. PAGEID* 261. She had a depressed affect and reported increased depression since her son had attempted suicide; she denied anxiety. *A.R. PAGEID* 261-62. Dr. Wolf diagnosed anxiety/depression, encouraged counseling and psychiatric care, and prescribed Wellbutrin XL, Cymbalta, Trazodone HCL, and Klonopin. *A.R. PAGEID* 263.

Plaintiff saw Dr. Wolf on October 23, 2012, for ear pain and sinus pressure. *A.R. PAGEID* 257-58. Dr. Wolf noted that plaintiff was "alert and cooperative; normal mood and affect; normal attention span and concentration." *Id*.

Plaintiff reported to OhioHealth Grady Memorial Hospital on October 31, 2012, because she felt "jittery inside," was having chest pain, "felt tingly and shaky inside," and "was afraid her blood pressure was up." *A.R. PAGEID* 265-67. She was diagnosed with hypertension and anxiety and was released the same day. *Id*.

Plaintiff saw Dr. Wolf on November 2, 2012, for generalized anxiety and chronic pain; she denied depression and suicidal ideation. *A.R. PAGEID* 253. Upon examination, plaintiff was alert and cooperative with normal mood, affect, attention span, and concentration. *Id*. Dr. Wolf diagnosed anxiety/depression, continued plaintiff's medications, and encouraged plaintiff to follow up with psychiatric care. *A.R. PAGEID* 254.

---

[1] The Court's discussion of the evidence is limited to the issues presented in this case, which "focus[] . . . on the evidence supporting psychiatric disability and disability due to the effect of [plaintiff's] medications." *Plaintiff's Motion*, *A.R. PAGEID* 330.

4

Dr. Wolf completed a health care provider's statement of disability on November 19, 2012. *A.R. PAGEID* 293. According to Dr. Wolf, plaintiff is "currently totally disabled" due to a herniated disk with radiculopathy and anxiety/depression; she is unable to work with restrictions. *Id*. Dr. Wolf anticipated that plaintiff would return to work full time on January 3, 2012. *Id*. He also commented that plaintiff "plans on seeing a psychiatrist, seeing currently a counselor, will go to pain management." *Id*.

In a letter dated December 20, 2012, plaintiff's counselor Barbara G. Harris indicated that plaintiff is "currently suffering from both major depression and anxiety in response to a serious family situation and some chronic health/pain issues." *A.R. PAGEID* 270. Ms. Harris also commented that plaintiff has "reported symptoms consistent with the diagnosis of Panic Disorder." *Id*. Ms. Harris described plaintiff's symptoms and limitations as follows:

> Her symptoms, both physical and mental, are causing her to be unable to receive adequate sleep, safely drive a car or sustain a focus/concentration for any length of time. Additionally, it is my understanding that her doctor has referred her to a pain specialist for a consultation regarding her medications. Her current medications may be decreasing her ability of function at her usual high level of competency. Mrs. Groth is hopeful that once her medications are adjusted properly and if she is able to attend counseling sessions, that she would be able to begin working again in early January. Apparently, her doctor has told her it will likely take her a few weeks longer to be able to drive safely once again.

*Id*.

Plaintiff saw Dr. Wolf on December 31, 2012, for depression and a blood pressure check. *A.R. PAGEID* 249. Plaintiff reported depression, panic attacks, chronic pain, fatigue, malaise, and

insomnia.  *Id*.  Dr. Wolf observed a "depressed affect."  *A.R. PAGEID* 250.  He continued plaintiff's medications and encouraged her to schedule an appointment with a psychiatrist.  *A.R. PAGEID* 251.

Harold K. Gever, M.D., reviewed the record and, on January 11, 2013, completed a "physician file review."  *A.R. PAGEID* 241-44.  According to Dr. Gever, there "is no objective medical information . . . which documents any evidence of functional limitations supporting [plaintiff's] inability to work from 10/31/2012 through [the date of the review.]"  *A.R. PAGEID* 242.  Dr. Gever acknowledged documentation of cognitive limitations that would impair plaintiff's ability to perform her job: "This patient's disability is best supported by her ongoing behavioral health issues of anxiety/depression/panic disorder. The documentation provided by Barbara Harris, LISW, her therapist, from 12/20/12 clearly describes this patient's cognitive limitations which include difficulties with sleep, an inability to safely operate a motor vehicle, and difficulties with concentration/focus."  *Id*.  Dr. Gever opined that plaintiff would be able to work without restrictions, but that her symptoms of anxiety/depression may affect her ability to perform the essential functions of her job.  *A.R. PAGEID* 242-43.  As for Ms. Harris's opinion that medications may adversely affect plaintiff, Dr. Gever found that "Dr. Wolf's office notes provide no such statements with reference to medications he is prescribing for any of [plaintiff's] medical complaints/diagnoses."  *A.R. PAGEID* 243.  Although plaintiff "may meet the criteria for a short term disability on the basis of a behavioral health issue (anxiety/depression and/or panic disorder), there is no objective medical documentation supporting such disability due to a medical

6

condition as outlined in Dr. Jacob Wolf's office notes." *Id*.

Marcus Goldman, M.D., reviewed the record and, on January 17, 2013, completed a "peer file review." *A.R. PAGEID* 197-200. Dr. Goldman saw no evidence documenting functional limitations or an inability to work from October 31, 2012, through the date of the decision:

> There are no objective data to support impairment. It should be pointed out that there is very little information for the dates in question — a time period covering almost 3 months. The claimant presented to the emergency room with anxiety towards the end of October 2012. Notes from the claimant's primary care provider either find the claimant either completely intact or with a depressed affect. A letter from the claimant's therapist is unaccompanied by therapy progress notes or mental status examinations. There are no measured data to support impairment in focus or concentration and no objective data to support lethargy or sedation from the claimant's medications. Although the claimant was seen in the emergency room for what was said to be anxiety the information in this record, or the dates in question does not establish the presence of a mental disorder of such severity as to preclude this claimant from functioning or working. For instance, there is no evidence of impairment in activities or independent activities of daily living as a result of mental disorder. The claimant is not suicidal, vegetative, aggressive, thought disordered, or with objective evidence of a grossly impairing anxiety condition. The data do not suggest that this claimant required more emergent or acute transition to a more intensive level of care. As above, there are no psychotherapy notes, no treatment plans, no measured or measurable goals and strategies to return this claimant to work. Therapeutic treatment modalities are not specified. It is not suggested that there has been any aggressive alteration in treatment planning. It is lastly noted that the expression of emotions within the context of a doctor's office or a therapy session is not in and of itself sufficient to establish global impairment. Rather, it can constitute appropriate use of medical or therapeutic time. Given the totality of the data in the absence of dedicated mental health notes for review, functional impairment and the inability to work is not objectively supported.

*A.R. PAGEID* 198.

Dr. Goldman also rejected Ms. Harris's "suggested impairment in focus and concentration," finding a lack of "measured data to support impairing cognitive dysfunction." *A.R. PAGEID* 198-99. Similarly, Dr. Goldman rejected Ms. Harris's opinion that medications may adversely affect plaintiff, reasoning that "there are no findings on examination that would support lethargy or somnolence, altered sensorium, measured cognitive dysfunction, slowing or confusion." *A.R. PAGEID* 199. According to Dr. Goldman, plaintiff is able to work without restriction. *Id*.

### III. The Plan

The Plan defines disability as follows:

> For purposes of STD benefits, when a Participant provides Objective Medical Documentation supporting that, due to a medical condition and related limitation(s), he is unable to perform the normal job duties of his regular job or any other job to which he could be assigned (with or without modification of those duties). The Objective Medical Documentation must support both the medical condition and any actual limitation(s) caused by the medical condition.

*CenturyLink Disability Plan*, § 1.15(a), *A.R. PAGEID* 47.  The Plan defines "Objective Medical Documentation" as "written documentation of observable, measurable and reproducible findings from examination and supporting laboratory or diagnostic tests, assessment or diagnostic formulation, such as, but not limited to, x-ray reports, elevated blood pressure readings, lab test results, functionality assessments, psychological testing, etc."  *Id*. at § 1.31, *A.R. PAGEID* 52.

### IV. The Administrative Decision

By letter dated January 18, 2013, the TPA Appeals Board issued a decision upholding the denial of plaintiff's claim to short-term

8

disability benefits.  *A.R. PAGEID* 177-82.  After reviewing the Plan's definition of "disability" and eligibility requirements for benefits, *A.R. PAGEID* 177, the letter quotes the entirety of the "mental health review" by Dr. Goldman and the "medical review" by Dr. Gever, although Drs. Goldman and Gever are not actually identified in the letter. *A.R. PAGEID* 177-82.  The letter concludes by indicating "that the above decision is binding" and informing plaintiff of her right to file suit under ERISA.  *A.R. PAGEID* 182.

**V.    Standard**

A challenge to an ERISA plan's denial of benefits is reviewed *de novo* unless, as is the case here, the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan. *Shields v. Reader's Digest Ass'n, Inc.*, 331 F.3d 536, 541 (6th Cir. 2003) (quoting *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115 (1989)).  "If a plan grants such discretionary authority, the plan administrator's decision to deny benefits is reviewed under the deferential 'arbitrary and capricious' standard of review."  *Id*. (quoting *Perez v. Aetna Life Ins. Co.,* 150 F.3d 550, 555 (6th Cir. 1998)).  "This standard 'is the least demanding form of judicial review of administrative action . . . .  When it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary and capricious.'"  *Evans v. UnumProvident Corp.*, 434 F.3d 866, 876 (6th Cir. 2006) (internal quotations omitted) (quoting *Killian v. Healthsource Provident Adm'rs,*

9

*Inc.*, 152 F.3d 514, 520 (6th Cir. 1998)). "The arbitrary-and-capricious standard, however, does not require [the Court] merely to rubber stamp the administrator's decision." *Jones v. Metro. Life Ins. Co.*, 385 F.3d 654, 661 (6th Cir. 2004) (citing *McDonald v. W.-S. Life Ins. Co.*, 347 F.3d 161, 172 (6th Cir. 2003)). Instead, "a decision will be upheld 'if it is the result of a deliberate principled reasoning process, and if it is supported by substantial evidence.'" *Evans*, 434 F.3d at 876 (internal quotations omitted) (quoting *Killian*, 152 F.3d at 520). This requires the reviewing court to weigh "the quality and quantity of the medical evidence and the opinions on both sides of the issues." *McDonald,* 347 F.3d at 172.

**VI. Discussion**

The parties have stipulated that the "denial of Plaintiff's claim for benefits should be reviewed under the arbitrary and capricious standard of review." *Stipulation Regarding Standard of Review*, ¶ 3. Nevertheless, plaintiff argues that a "tempered" review is required because the TPA operates under a conflict of interest. *Plaintiff's Motion*, *A.R. PAGEID* 335-39. Plaintiff specifically argues that a conflict of interest exists because "CenturyLink has hired the same TPA to administer its disability plan, its obligations under the Family and Medical Leave Act ("FMLA"), and its obligations under various state workers' compensation regimes." *Id*. at *A.R. PAGEID* 335. According to plaintiff, the "conflict exists because the legal regime under which a claim for benefits under a plan governed by ERISA is to proceed is markedly different from the processing of FMLA or worker's

10

compensation claims." *Id*. at p. 7.  Worker's compensation and FMLA claims are "adversarial claims," plaintiff argues, whereas a TPA, as an ERISA fiduciary, is charged with administering ERISA claims "solely in the interests of the plan's participants." *Id*. (emphasis omitted). Plaintiff also argues that the conflict is apparent in the record because the TPA "made no effort whatsoever to investigate Groth's claim," failed to request records from plaintiff's pain specialist and therapist, and failed to request records related to fibromyalgia and a herniated disc.  *Plaintiff's Motion*, A.R. PAGEID 338.  Plaintiff also argues that the TPA initially denied plaintiff's claim because plaintiff had failed to produce medical records, but that "the alleged absence of medical information appears to have been the TPA's refusal to pay for medical records it had requested." *Id*. at A.R. PAGEID 334-35.  Plaintiff's arguments are not well taken.

First, there is no indication that the TPA failed to investigate plaintiff's claim.  The TPA requested records on multiple occasions from the only medical source identified by plaintiff.  *See* A.R. PAGEID 119, 124-27, 130, 151, 291.  Plaintiff was informed of the opportunity to submit additional evidence on appeal, and the TPA requested that plaintiff consider whether she had other medical providers, medications, or scheduled procedures or testing about which the TPA was not aware.  A.R. PAGEID 286.  The TPA also contacted plaintiff on several occasions in an attempt to obtain additional medical evidence and, on January 7, 2013, it was plaintiff who informed the TPA that

11

she did not want her case tolled in order to permit her to secure additional medical evidence. *See A.R. PAGEID* 128-31.

Second, there is no evidence that the lack of medical records to support plaintiff's initial claim was a function of the refusal on the part of the TPA to pay for the records. The statement from Dr. Wolf's office seeking payment for records is dated January 21, 2013, *i.e.*, three days after the TPA's Appeals Board denied plaintiff's appeal. *A.R. PAGEID* 184 (invoice dated January 21, 2013); 149 (invoice dated February 7, 2013). Moreover, to require plaintiff to produce documents in support of her claim and to pay the cost of producing those documents does not constitute a violation of ERISA's prohibition against "require[ing] payment of a fee or costs as a condition for making a claim." 29 C.F.R. § 2560.503-1(b)(3); *Sgro v. Danone Waters of N. Am., Inc.*, 532 F.3d 940, 944 (9th Cir. 2008).

This case does not present the usual conflict of interest, *i.e.,* where the entity that administers an ERISA plan "is both the decision-maker, determining which claims are covered, and also the payor of those claims." *See Calvert v. Firstar Fin., Inc.*, 409 F.3d 286, 292 (6th Cir. 2005) (citing *Marks v. Newcourt Credit Grp., Inc.*, 342 F.3d 444, 457 (6th Cir. 2003)). Plaintiff concedes as much, *Plaintiff's Motion*, *A.R. PAGEID* 335, but argues that a conflict exists nevertheless because the TPA administers workers' compensation and

12

FMLA claims in addition to ERISA claims.[2]  *Id*.  Plaintiff has not, however, cited any authority that recognizes a conflict arising out of this arrangement.  In fact, every case cited by plaintiff in support of her proposed "tempered" review of the denial of plaintiff's claim presents the usual form of conflict which, as noted supra, is not present here.  *See Farhner v. United Transp. Union Discipline Income Prot. Program*, 645 F.3d 338, 342 (6th Cir. 2011); *Schwalm v. Guardian Life Ins. Co. of Am.*, 626 F.3d 299, 311-12 (6th Cir. 2010); *Cox v. Standard Ins. Co.*, 585 F.3d 295, 299 (6th Cir. 2009); *Univ. Hosps. of Cleveland v. Emerson Elec. Co.*, 202 F.3d 839, 846 (6th Cir. 2000).  Accordingly, the Court will review the denial of plaintiff's application for short-term disability benefits under the highly deferential "arbitrary and capricious" standard.

However, having reviewed the administrative record in this case, the Court concludes that the decision denying plaintiff benefits was arbitrary and capricious.  "ERISA was enacted to promote the interests of employees and their beneficiaries in employee benefit plans, and to protect contractually defined benefits."  *Firestone Tire & Rubber Co.*, 489 U.S. at 113 (internal quotation marks and citations omitted).  "The Act furthers these aims in part by regulating the manner in which plans process benefits claims."  *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 830 (2003).  Every plan must

---

[2] Defendant has produced the contract between the TPA and CenturyLink, indicating that the TPA does not administer CenturyLink's workers' compensation claims.  *Defendant's Response*, ECF 22, Exhibit 2.

> (1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and
>
> (2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

29 U.S.C.A. § 1133. *See also Black & Decker Disability Plan*, 538 U.S. at 830.

Plaintiff was provided written notice that her claim for benefits under the Plan had been denied. *A.R. PAGEID* 204-09. However, that notice merely quotes the "mental health review" by Dr. Goldman and the "medical review" by Dr. Gever and states that the "Appeals Board has upheld [plaintiff's] original denial of benefits." *Id*. The notice did not indicate that the medical evidence proffered by plaintiff was actually reviewed, nor did it indicate whether or why the assessments of Dr. Wolf and Ms. Harris were rejected. Although there is "'nothing inherently objectionable'" about relying on the opinions of reviewing physicians such as Dr. Goldman and Dr. Gever, *see Javery v. Lucent Techs., Inc. Long Term Disability Plan for Mgmt. or LBA Emps.*, 741 F.3d 686, 702 (6th Cir. 2014) (quoting *Calvert,* 409 F.3d at 296), the TPA did not expressly indicate that it was relying on Dr. Goldman's or Dr. Gever's assessments in denying benefits. The TPA quoted their assessments but did not provide any discussion of those assessments. Significantly, the TPA's decision failed to address the inconsistencies between Dr. Goldman's and Dr. Gever's assessments:

14

although Dr. Goldman found no documented cognitive limitations that would impair plaintiff's ability to perform her job, *A.R. PAGEID* 198-99, Dr. Gever opined that there are documented cognitive limitations that would impair plaintiff's ability to perform her job, *A.R. PAGEID* 242-43. Defendant argues that it was Dr. Goldman's opinion that was adopted in this respect, and that Dr. Gever was not qualified to opine on plaintiff's mental health, *see Defendant's Response*, pp. 12-15, but this explanation is not apparent from either the decision denying benefits or from the administrative record.

In affirming the original decision denying benefits, the TPA may have merely intended to adopt the reasoning of the November 28, 2012 denial. *See Wenner v. Sun Life Assur. Co. of Canada*, 482 F.3d 878, 882-83 (6th Cir. 2007) (finding that, under 29 U.S.C. § 1133(2), a plan administrator may not initially deny benefits for one reason, and then deny benefits for an entirely different reason, after an administrative appeal, without affording the claimant an opportunity to respond to the second basis for the denial of benefits). However, plaintiff was originally denied benefits because she failed to supply "any medical information to substantiate [that she is] Disabled." *A.R. PAGEID* 295. Although plaintiff failed to provide any medical information prior to the November 28, 2012 denial of benefits, she unquestionably provided some "medical information" prior to the final decision denying benefits.

The United States Supreme Court has held in the ERISA context that "courts have no warrant to require administrators automatically

15

to accord special weight to the opinions of a claimant's physician; nor may courts impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation." *Black & Decker Disability Plan*, 538 U.S. at 834.  However, a plan administrator cannot arbitrarily disregard the medical evidence proffered by the claimant.  *Evans*, 434 F.3d at 877 (quoting *Black & Decker Disability Plan,* 538 U.S. at 834). The TPA's decision denying benefits does just that.  Although defendant offers numerous explanations for the TPA's denial of plaintiff's appeal, *see Defendant's Motion*, pp. 14 ("The TPA denied Plaintiff's claim and appeal because she submitted only a conclusory opinion from Dr. Wolf with virtually no supporting objective medical documentation demonstrating any functional limitations or impairment of her ability to work."), 15-16; *Defendant's Response*, p. 13 ("It was not an abuse of discretion for the TPA to base its decision on the opinion of the psychiatric expert, the failure of Plaintiff's own therapist to opine that she was disabled, and Dr. Wolf's records instead of Dr. Gever's comments."), none of those explanations are apparent in the TPA's decision denying benefits.  The TPA denied plaintiff's appeal and "upheld [her] original denial of benefits" without any explanation whatsoever.  *See A.R. PAGEID* 177-82.  Absent some explanation for the denial of benefits or discussion of plaintiff's medical evidence, the opinions of Dr. Wolf and Ms. Harris, or the conflict between Dr. Goldman and Dr. Gever's opinions, *see Evans*, 434 F.3d at 877 (indicating that a plan administrator may

16

choose to rely on the medical opinion of one doctor over another, so long as the administrator offers a reasonable explanation based on the evidence for its decision); *Roumeliote v. Long Term Disability Plan for Emps. of Worthington Indus.,* 475 F. Supp. 2d 742, 746 (S.D. Ohio 2007), *aff'd,* 292 F. App'x 472 (6th Cir. 2008), the Court cannot say that the denial of benefits was "the result of a deliberate principled reasoning process," *see Evans*, 434 F.3d at 876, or that the Plan provided plaintiff with "specific reasons" for the denial of benefits. *See* 29 U.S.C. § 1133(1); *Black & Decker Disability Plan*, 538 U.S. at 830. Accordingly, this Court concludes that defendant's denial of plaintiff's claim for benefits was arbitrary and capricious.

When an ERISA plan administrator's decision to deny benefits is found to be arbitrary and capricious, courts may either award benefits to the claimant or remand the matter to the plan administrator for further action or consideration. *Elliott v. Metro. Life Ins. Co.*, 473 F.3d 613, 621 (6th Cir. 2006) (citing *Smith v. Cont'l Cas. Co.,* 450 F.3d 253, 265 (6th Cir. 2006)). Here, the Court does not believe that the record clearly establishes that plaintiff is entitled to benefits. This matter is therefore **REMANDED** to the TPA to conduct a full and fair review and to issue a decision that reflects a deliberate and principled reasoning process. *See id*. at 622 (finding remand appropriate where the court did not find the plaintiff was "clearly entitled to benefits").

17

Accordingly, *Plaintiff's Motion for Judgment on the Administrative Record*, ECF 18, is **GRANTED**.  *Defendant's Motion for Judgment on the Administrative Record*, ECF 20, is **DENIED**.

The Clerk is **DIRECTED** to enter final judgment.


December 30, 2014                               *s/Norah McCann King*
                                                 Norah M<sup>c</sup>Cann King
                                           United States Magistrate Judge

18