IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

STACIE GROTH,

        Plaintiff,

    vs.                         Civil Action 2:13-cv-1238
                                     Magistrate Judge King

CENTURYLINK DISABILITY PLAN,

        Defendant.

## OPINION AND ORDER

This is an action under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1132 ("ERISA"), in which plaintiff seeks recovery of short-term disability benefits under an employer-sponsored plan. This matter is now before the Court, with the consent of the parties pursuant to 28 U.S.C. 636(c), for consideration of the parties' second cross-motions for judgment on the administrative record. *Plaintiff's Motion*, ECF No. 45; *Defendant's Motion*, ECF No. 46. For the reasons that follow, *Plaintiff's Motion* is **GRANTED** and *Defendant's Motion* is **DENIED**.

I. **Background**

This Court previously detailed the procedural and factual background of this case, including the medical evidence of record. *See Opinion and Order*, ECF No. 23. Plaintiff Stacie Groth began working for CenturyLink on June 16, 2008 and was a participant in the CenturyLink Disability Plan (the "Plan"), which is sponsored by CenturyLink, Inc. *Administrative Record*, ECF No. 17, *PAGEID* 110

("*A.R. I PAGEID ___*"); *Answer*, ECF No. 12, ¶ 1.  The Plan
Administrator, who had authority to, *inter alia*, determine eligibility
for benefits, construe the terms of the plan and decide appeals,
delegated its authority to a Third Party Administrator, The Reed Group
('TPA' or 'Reed'), which is also sometimes referred to as CenturyLink
Disability Services ('CDS').  *Stipulation Regarding Standard of
Review*, ECF No. 19, ¶ 1.  "Reed determines eligibility for benefits,
interprets the plan and decides appeals but is not responsible for
paying benefits." *Id*. at ¶ 2.  A participant is eligible for short-
term disability benefits under the Plan if she is disabled and if she
fulfills certain requirements and obligations, including providing to
the TPA documentation supporting total disability (or partial
disability):

> Documentation must be from the original dated medical
> record and support the claim of total Disability (or
> partial Disability requiring reduced hours, if
> appropriate). Such documentation shall include: the
> Patient's subjective complaints, the Objective Medical
> Documentation, and a plan for treatment or management of
> the problem.  The documentation must be legible and
> sufficient to allow another trained medical professional to
> review the case, and see how the original Approved Provider
> came to his determination and decisions.  Payment of
> benefits prior to the receipt of required Objective Medical
> Documentation is made in good faith but is subject to
> recovery if Objective Medical Documentation is not timely
> received or if the claim is not approved.

*Administrative Record after Remand*, ECF No. 40, *PAGEID* 585 ("*A.R. II
PAGEID ___*").  "Objective Medical Documentation" under the Plan means
"written documentation of observable, measurable and reproducible
findings from examination and supporting laboratory or diagnostic

2

tests, assessment or diagnostic formulation, such as, but not limited to, x-ray reports, elevated blood pressure readings, lab test results, functionality assessments, psychological testing, etc." *A.R. II PAGEID* 576.

On November 5, 2012, plaintiff applied for short-term disability benefits under the Plan in connection with a planned absence from October 31, 2012, through "the end of the year." *A.R. I PAGEID* 110, 119. Plaintiff indicated that she was disabled due to mental health issues, fibromyalgia, and stress. *A.R. I PAGEID* 118. Plaintiff identified Jacob Wolf, M.D., as her treating physician and noted that she had been referred to a pain specialist and therapist/counseling. *A.R. PAGEID* 119.

The TPA denied plaintiff's application for short-term disability on November 28, 2012, because, despite requests to plaintiff and Dr. Wolf for information, it had "not been supplied with any medical information to substantiate you are Disabled." *A.R. I PAGEID* 119, 121, 124-25, 272-73, 291, 302, 318-19.

On November 29, 2012, the TPA received a completed health care provider statement from Dr. Wolf dated November 19, 2012, which stated that plaintiff was "currently totally disabled" because of anxiety/depression and a herniated lumbar disk. *A.R. I PAGEID* 126, 293. Dr. Wolf anticipated that plaintiff would return to work full time on January 3. *Id*. Plaintiff submitted a written notice of appeal on November 30, 2012. *A.R. PAGEID* 127, 289.

On December 26, 2012, plaintiff was informed that no records had

3

been received from her psychiatrist or pain management specialist and
that her case could be tolled for 45 days in order to permit her to
submit additional medical evidence. *A.R. PAGEID* 130.  On January 7,
2013, plaintiff informed the TPA that she had not treated with a
psychiatrist and that, although she had an appointment to see a pain
management specialist on January 22, 2013, she did not want to toll
her case. *A.R. PAGEID* 131.

The TPA affirmed the denial of short-term disability benefits on
January 18, 2013. *A.R. PAGEID* 177-82.  Plaintiff filed this action on
December 13, 2013.

On December 31, 2014, the Court concluded that the denial of
plaintiff's claims for benefits was arbitrary and capricious:

> Plaintiff was provided written notice that her claim
> for benefits under the Plan had been denied. *A.R. PAGEID*
> 204-09.  However, that notice merely quotes the "mental
> health review" by Dr. Goldman [Marcus Goldman, M.D., a
> reviewing physician] and the "medical review" by Dr. Gever
> [Harold K. Gever, M.D., a reviewing physician] and states
> that the "Appeals Board has upheld [plaintiff's] original
> denial of benefits." *Id*.  The notice did not indicate that
> the medical evidence proffered by plaintiff was actually
> reviewed, nor did it indicate whether or why the
> assessments of Dr. Wolf and Ms. Harris [Barbara Harris,
> LISW, plaintiff's counselor] were rejected. Although there
> is "'nothing inherently objectionable'" about relying on
> the opinions of reviewing physicians such as Dr. Goldman
> and Dr. Gever, *see Javery v. Lucent Techs., Inc. Long Term
> Disability Plan for Mgmt. or LBA Emps.*, 741 F.3d 686, 702
> (6th Cir. 2014) (quoting *Calvert*, 409 F.3d at 296), the TPA
> did not expressly indicate that it was relying on Dr.
> Goldman's or Dr. Gever's assessments in denying benefits.
> The TPA quoted their assessments but did not provide any
> discussion of those assessments. Significantly, the TPA's
> decision failed to address the inconsistencies between Dr.
> Goldman's and Dr. Gever's assessments:  although Dr.
> Goldman found no documented cognitive limitations that
> would impair plaintiff's ability to perform her job, *A.R.*

*PAGEID* 198-99, Dr. Gever opined that there are documented cognitive limitations that would impair plaintiff's ability to perform her job, *A.R. PAGEID* 242-43.  Defendant argues that it was Dr. Goldman's opinion that was adopted in this respect, and that Dr. Gever was not qualified to opine on plaintiff's mental health, *see Defendant's Response*, pp. 12-15, but this explanation is not apparent from either the decision denying benefits or from the administrative record.

In affirming the original decision denying benefits, the TPA may have merely intended to adopt the reasoning of the November 28, 2012 denial.  *See Wenner v. Sun Life Assur. Co. of Canada*, 482 F.3d 878, 882-83 (6th Cir. 2007) (finding that, under 29 U.S.C. § 1133(2), a plan administrator may not initially deny benefits for one reason, and then deny benefits for an entirely different reason, after an administrative appeal, without affording the claimant an opportunity to respond to the second basis for the denial of benefits).  However, plaintiff was originally denied benefits because she failed to supply "any medical information to substantiate [that she is] Disabled."  *A.R. PAGEID* 295.  Although plaintiff failed to provide any medical information prior to the November 28, 2012 denial of benefits, she unquestionably provided some "medical information" prior to the final decision denying benefits.

The United States Supreme Court has held in the ERISA context that "courts have no warrant to require administrators automatically to accord special weight to the opinions of a claimant's physician; nor may courts impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation."  *Black & Decker Disability Plan*, 538 U.S. at 834.  However, a plan administrator cannot arbitrarily disregard the medical evidence proffered by the claimant.  *Evans*, 434 F.3d at 877 (quoting *Black & Decker Disability Plan,* 538 U.S. at 834). The TPA's decision denying benefits does just that. Although defendant offers numerous explanations for the TPA's denial of plaintiff's appeal, *see Defendant's Motion*, pp. 14 ("The TPA denied Plaintiff's claim and appeal because she submitted only a conclusory opinion from Dr. Wolf with virtually no supporting objective medical documentation demonstrating any functional limitations or impairment of her ability to work."), 15-16; *Defendant's Response*, p. 13 ("It was not an abuse of discretion for the TPA to base its decision on the opinion of the psychiatric

5

expert, the failure of Plaintiff's own therapist to opine
that she was disabled, and Dr. Wolf's records instead of
Dr. Gever's comments."), none of those explanations are
apparent in the TPA's decision denying benefits.  The TPA
denied plaintiff's appeal and "upheld [her] original denial
of benefits" without any explanation whatsoever.  *See A.R.*
*PAGEID* 177-82.  Absent some explanation for the denial of
benefits or discussion of plaintiff's medical evidence, the
opinions of Dr. Wolf and Ms. Harris, or the conflict
between Dr. Goldman and Dr. Gever's opinions, *see Evans*,
434 F.3d at 877 (indicating that a plan administrator may
choose to rely on the medical opinion of one doctor over
another, so long as the administrator offers a reasonable
explanation based on the evidence for its decision);
*Roumeliote v. Long Term Disability Plan for Emps. of*
*Worthington Indus.,* 475 F. Supp. 2d 742, 746 (S.D. Ohio
2007), *aff'd,* 292 F. App'x 472 (6th Cir. 2008), the Court
cannot say that the denial of benefits was "the result of a
deliberate principled reasoning process," *see Evans*, 434
F.3d at 876, or that the Plan provided plaintiff with
"specific reasons" for the denial of benefits.  *See* 29
U.S.C. § 1133(1); *Black & Decker Disability Plan*, 538 U.S.
at 830.  Accordingly, this Court concludes that defendant's
denial of plaintiff's claim for benefits was arbitrary and
capricious.

*Opinion and Order*, ECF No. 23, pp. 14-17.  The Court therefore

remanded the matter to the TPA "to conduct a full and fair review and

to issue a decision that reflects a deliberate and principled

reasoning process."  *Id*. at 17.

Following remand, plaintiff supplemented the administrative

record with nearly 1000 pages of medical records from eleven different

providers in addition to Dr. Wolf and Ms. Harris.  *See generally A.R.*

*II*.  Warren Taff, M.D., M.P.H., a board certified psychiatrist, and

Richard Kaplan, M.D., a board certified physical medicine and

rehabilitation specialist, reviewed the record for the TPA.  *A.R. II*

*PAGEID* 1595-1618.  In a letter dated April 21, 2015, the TPA advised

that plaintiff's claim for benefits was again denied.  *A.R. II PAGEID*

6

1619-24.

In a written opinion dated May 5, 2015, an administrative law judge with the Social Security Administration found that plaintiff's severe impairments, which consist of lumbar degenerative disc disease/scoliosis/spondylosis, fibromyalgia, anxiety, and depression, *A.R. II PAGEID* 1685, rendered her disabled within the meaning of the Social Security Act since January 31, 2013. *A.R. PAGEID II* 1690.

On May 19, 2015, plaintiff forwarded the Social Security Administration decision to the TPA and requested reconsideration of the decision denying plaintiff's claim for benefits under the Plan. *A.R. II PAGEID* 1678.  Plaintiff also advised that she would forward a complete copy of her Social Security disability file as soon as she received it. *Id.*  On June 8, 2015, the TPA advised that it would not reopen its administrative record or reconsider its decision. *A.R. II PAGEID* 1706.

## II.  Evidence of Record[1]

### A.  Pre-remand evidence

This Court has previously set out in detail the medical evidence presented prior to the order of remand. *Opinion and Order*, ECF No. 23, pp. 4-8.  Dr. Wolf, plaintiff's treating physician, completed a health care provider's statement of disability on November 19, 2012. *A.R. I PAGEID* 293.  According to Dr. Wolf, plaintiff was "currently totally disabled" due to a herniated disk with radiculopathy and anxiety/depression.  *Id.*  Dr. Wolf noted that plaintiff's medications

---

[1]  The Court's discussion of the evidence is limited to the issues presented in this case.

included Wellbutrin, Cymbalta, Trazodone, and Klonopin and that she
"plans on seeing a psychiatrist, seeing currently a counselor, will go
to pain management." *Id*. Dr. Wolf concluded that plaintiff was
unable to work even with restrictions but that she anticipated a
return to full time work on January 3. *Id*.

In a letter dated December 20, 2012, Ms. Harris, plaintiff's
counselor, indicated that plaintiff is "currently suffering from both
major depression and anxiety in response to a serious family situation
and some chronic health/pain issues." *A.R. I PAGEID* 270. Ms. Harris
also commented that plaintiff has "reported symptoms consistent with
the diagnosis of Panic Disorder." *Id*. Ms. Harris described
plaintiff's symptoms and limitations as follows:

> Her symptoms, both physical and mental, are causing her to
> be unable to receive adequate sleep, safely drive a car or
> sustain a focus/concentration for any length of time.
> Additionally, it is my understanding that her doctor has
> referred her to a pain specialist for a consultation
> regarding her medications. Her current medications may be
> decreasing her ability of function at her usual high level
> of competency. Mrs. Groth is hopeful that once her
> medications are adjusted properly and if she is able to
> attend counseling sessions, that she would be able to begin
> working again in early January. Apparently, her doctor has
> told her it will likely take her a few weeks longer to be
> able to drive safely once again.

*Id*.

Harold K. Gever, M.D., reviewed the record and, on January 11,
2013, completed a "physician file review." *A.R. I PAGEID* 241-44.
According to Dr. Gever, there "is no objective medical information . .
. which documents any evidence of functional limitations supporting
[plaintiff's] inability to work from 10/31/2012 through [the date of

8

the review.]" *A.R. I PAGEID* 242.  Dr. Gever opined that plaintiff would be able to work without restrictions, but that her symptoms of anxiety/depression may affect her ability to perform the essential functions of her job.  *A.R. PAGEID* 242-43.  As for Ms. Harris's opinion that medications may adversely affect plaintiff, Dr. Gever found that "Dr. Wolf's office notes provide no such statements with reference to medications he is prescribing for any of [plaintiff's] medical complaints/diagnoses."  *A.R. I PAGEID* 243.  Although plaintiff "may meet the criteria for a short term disability on the basis of a behavioral health issue (anxiety/depression and/or panic disorder), there is no objective medical documentation supporting such disability due to a medical condition as outlined in Dr. Jacob Wolf's office notes."  *Id.*

Marcus Goldman, M.D., reviewed the record and, on January 17, 2013, completed a "peer file review."  *A.R. I PAGEID* 197-200.  Dr. Goldman saw no evidence documenting functional limitations or an inability to work from October 31, 2012, through the date of his review:

> There are no objective data to support impairment.  It should be pointed out that there is very little information for the dates in question — a time period covering almost 3 months.  The claimant presented to the emergency room with anxiety towards the end of October 2012.  Notes from the claimant's primary care provider either find the claimant either completely intact or with a depressed affect.  A letter from the claimant's therapist is unaccompanied by therapy progress notes or mental status examinations. There are no measured data to support impairment in focus or concentration and no objective data to support lethargy or sedation from the claimant's medications.  Although the claimant was seen in the emergency room for what was said

9

to be anxiety the information in this record, or the dates in question does not establish the presence of a mental disorder of such severity as to preclude this claimant from functioning or working. For instance, there is no evidence of impairment in activities or independent activities of daily living as a result of mental disorder. The claimant is not suicidal, vegetative, aggressive, thought disordered, or with objective evidence of a grossly impairing anxiety condition. The data do not suggest that this claimant required more emergent or acute transition to a more intensive level of care. As above, there are no psychotherapy notes, no treatment plans, no measured or measurable goals and strategies to return this claimant to work. Therapeutic treatment modalities are not specified. It is not suggested that there has been any aggressive alteration in treatment planning. It is lastly noted that the expression of emotions within the context of a doctor's office or a therapy session is not in and of itself sufficient to establish global impairment. Rather, it can constitute appropriate use of medical or therapeutic time. Given the totality of the data in the absence of dedicated mental health notes for review, functional impairment and the inability to work is not objectively supported.

*A.R. I PAGEID* 198.

Dr. Goldman also rejected Ms. Harris's "suggested impairment in focus and concentration," finding a lack of "measured data to support impairing cognitive dysfunction." *A.R. I PAGEID* 198-99. Similarly, Dr. Goldman rejected Ms. Harris's opinion that medications may adversely affect plaintiff, reasoning that "there are no findings on examination that would support lethargy or somnolence, altered sensorium, measured cognitive dysfunction, slowing or confusion." *A.R. I PAGEID* 199. According to Dr. Goldman, plaintiff was able to work without restriction. *Id*.

**B. Post-remand evidence**

As part of the additional evidence submitted following remand, plaintiff offered evidence related to a diagnosis of fibromyalgia.

10

Marc. A. Antonchak, M.D., examined plaintiff on December 3, 2010 upon referral by Dr. Wolf. *A.R. II PAGEID* 663-65. Plaintiff reported that "for the last couple of months she has actually had worsened arthralgias and myalgias mostly of her back, neck, arms, elbows and sometimes thighs." *A.R. II PAGEID* 664. Dr. Antonchak noted that plaintiff had 16 of 18 tender points and found that "a lot of her symptoms are compatible with her diagnosis of fibromyalgia." *A.R. II PAGEID* 664-65.

Plaintiff saw Dr. Antonchak again on June 13, 2011, and reported musculoskeletal pain, particularly bilateral hip pain and persistent, generalized body aches. *A.R. II PAGEID* 667. Dr. Antonchak prescribed Neurontin for pain and recommended that plaintiff speak with a counselor or psychiatrist. *Id.*

On May 7, 2012, Yeshwant P. Reddy, M.D., evaluated plaintiff and diagnosed, *inter alia*, fibromyalgia syndrome. *A.R. II PAGEID* 1052. During a follow-up visit on September 3, 2013, plaintiff reported increasing back and leg pain. Plaintiff underwent epidural steroid injections in October 2013. *A.R. II PAGEID* 1035. On October 27, 2014, Dr. Reddy opined that "a good portion of her pain is indeed related to fibromyalgia in addition to her spinal conditions." *Id.* Medications included hydrocodone, Cymbalta, and ibuprofen. *A.R. II PAGEID* 1045.

Plaintiff also submitted the reports of Daniel L. Davis, Ph.D., a psychologist, and of Mark Fettman, M.D., a psychiatrist, both of whom

11

examined plaintiff at the request of "Exam Coordinators Network."[2]
*A.R. II PAGEID* 702-16, 718-22.  In a report dated August 8, 2011,
following his examination of July 29, 2011, Dr. Davis indicated that
plaintiff's "affect (emotional presentation) was appropriate and
reactive to a stated generally anxious and depressed emotional state
that she told me is chronic in nature and has been worsened by her
physical discomfort."  *A.R. II PAGEID* 709.  Plaintiff had reported
symptoms associated with depression, such as limited appetite,
hopelessness, loss of interest or pleasure, loss of sexual interest,
poor concentration and irritability, but she denied suicidal and
homicidal ideation.  *A.R. II PAGEID* 710.  Referring to the results of
plaintiff's MMPI, Dr. Davis first cautioned that the "scores on the
MMPI 2RF validity scales raise concerns about the possible impact of
unscoreable responses and over-reporting (specifically, of somatic
and/or cognitive symptoms) on the validity of this protocol."  *A.R. II
PAGEID* 712.  According to Dr. Davis, plaintiff's "scores on the
substantive scales indicate somatic and cognitive complaints and
emotional dysfunction."  *Id.*  Plaintiff's "[c]ognitive complaints
include difficulties in memory and concentration," *id.*, and her
"[e]motional-internalizing findings include risk for suicidal
ideation, demoralization, depression, helplessness and hopelessness,
self-doubt, stress and worry, and anger."  *Id.*  Dr. Davis went on:

> [Plaintiff] reported a much larger number of somatic

---

[2] Reed Group's name appears at the top of Dr. Davis's report.  *A.R. II PAGEID*
702-716.  Plaintiff suggests that Reed Group "may have instigated the [Davis
and Fettman] examinations as part of an earlier claim review."  *Plaintiff's
Motion, PAGEID* 1764 n.4.

> symptoms rarely described by individuals with genuine
> medical conditions.  She also provided an unusual
> combination of responses that is associated with non-
> credible reporting of somatic and/or cognitive symptoms.
> This pattern of responding may also occur in individuals
> with substantial medical problems who report credible
> symptoms, but it could also reflect exaggeration.  In
> individuals with no history or other corroborating evidence
> of physical health symptoms this likely indicates non-
> credible reporting of somatic symptoms.  Scores on the
> somatic scales (Somatic Complaints, Malaise,
> Gastrointestinal Complaints, Head Pain Complaints, and
> Neurological Complaints and the Cognitive complaints scale)
> should be interpreted in light of this caution.
>
> There were no indications of under reporting of symptoms.

*A.R. II PAGEID* 713.  Dr. Davis also indicated that plaintiff "is at

risk for suicidal ideation although she did not endorse any of the

MMPI 2 RF Suicidal/Death scale items[,]" "is likely to feel

overwhelmed[,]" "very unlikely to be self-reliant[,]" "likely to be

stress-reactive and worry prone and to engage in obsessive rumination"

as well as "likely to have problems with anger, irritability, and low

tolerance for frustration[.]"  *A.R. II PAGEID* 714.

In a report dated August 8, 2011, following his examination of

plaintiff, Dr. Fettman stated:

> Based on my evaluation of her [plaintiff] and a review of
> her records, I would state that the patient has a Mood
> Disorder secondary to physical illness and I feel that she
> is disabled currently from doing her job.  She is on a
> great deal of medication as stated above.  Taking these
> medications, along with her physical illness, would further
> make it impossible for her to work in an effective manner
> because these medications are sedating.

*A.R. II PAGEID* 719.

June 24, 2014, treatment notes by Ms. Harris, plaintiff's

counselor, reflect increased depression and anxiety as well as

13

continued complaints of pain. *A.R. II PAGEID* 1032. Plaintiff's condition had improved by July 2014, but Ms. Harris noted symptoms of anxiety and depression. *A.R. II PAGEID* 1033. In September 2014, Ms. Harris continued to note symptoms of depression and anxiety. *Id.*

### III. The Plan

The Plan defines disability as follows:

> For purposes of STD benefits, when a Participant provides Objective Medical Documentation supporting that, due to a medical condition and related limitation(s), he is unable to perform the normal job duties of his regular job or any other job to which he could be assigned (with or without modification of those duties). The Objective Medical Documentation must support both the medical condition and any actual limitation(s) caused by the medical condition.

*CenturyLink Disability Plan*, § 1.15(a), *A.R. I PAGEID* 47. The Plan defines "Objective Medical Documentation" as "written documentation of observable, measurable and reproducible findings from examination and supporting laboratory or diagnostic tests, assessment or diagnostic formulation, such as, but not limited to, x-ray reports, elevated blood pressure readings, lab test results, functionality assessments, psychological testing, etc." *Id.* at § 1.31, *A.R. I PAGEID* 52.

### IV. The Administrative Decision Following Remand

By letter dated April 21, 2015, the TPA Appeals Board issued a decision upholding the denial of plaintiff's claim for short-term disability benefits. *A.R. II PAGEID* 1619-24. After summarizing the case history and reviewing the Plan's definition of "disability" and eligibility requirements for benefits, *A.R. II PAGEID* 1619-20, the letter details the medical evidence considered by and the opinions of its two independent physician reviewers, Drs. Kaplan and Taff, upon

14

whose opinions the TPA relied. *A.R. II PAGEID* 1621.

> Because Ms. Groth's providers did not supply medical
> information to substantiate that she is Disabled, as
> defined by CenturyLink's Short Term Disability Plan, which
> is confirmed by Dr. Kaplan and Dr. Taff's independent peer
> review, Reed Group relies on Dr. Kaplan and Dr. Taff's
> opinion that there was no documented objective medical
> evidence to support functional limitations and the
> inability to work from October 31, 2012 through February
> 04, 2014.

*A.R. II PAGEID* 1623. The letter went on to note that, although

plaintiff had applied for Social Security disability benefits, "[a]s

of the date of this letter[,] Reed Group has not been informed of the

Social Security Administration's determination." *Id.* The letter

concludes by indicating, "The decision in this matter is a final

adverse benefit determination" and informing plaintiff of her right to

file suit under ERISA. *Id.*

In response to plaintiff's May 19, 2015, request for

reconsideration of the denial of benefits in light of the May 5, 2015,

favorable decision of the Social Security Administration, *A.R. II*

*PAGEID* 1678, the TPA declined to reopen its administrative record or

reconsider. The TPA offered three reasons for this decision. *A.R. II*

*PAGEID* 1706. First, the TPA explained that the decision of the Social

Security Administration related to a different period of time (*i.e.,*

January 31, 2013 to the present) than did plaintiff's request for

short-term disability benefits (*i.e.,* "between October 31, 2012 and

February 04, 2013"). *Id.* Second, plaintiff's request that the TPA

consider the Social Security decision was untimely: the TPA issued

its decision on April 21, 2015 and its administrative record was

closed by the time of plaintiff's May 19, 2015 request for

reconsideration. *Id*. Finally, the Social Security Administration's standards of disability are different than those of the Plan. *Id*.

**V.   Standard**

A challenge to an ERISA plan's denial of benefits is reviewed *de novo* unless, as is the case here, the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan. *Shields v. Reader's Digest Ass'n, Inc.*, 331 F.3d 536, 541 (6th Cir. 2003) (quoting *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115 (1989)). "If a plan grants such discretionary authority, the plan administrator's decision to deny benefits is reviewed under the deferential 'arbitrary and capricious' standard of review.'" *Id*. (quoting *Perez v. Aetna Life Ins. Co.,* 150 F.3d 550, 555 (6th Cir. 1998)). "This standard 'is the least demanding form of judicial review of administrative action . . . . When it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary and capricious.'" *Evans v. UnumProvident Corp.*, 434 F.3d 866, 876 (6th Cir. 2006) (internal quotations omitted) (quoting *Killian v. Healthsource Provident Adm'rs, Inc.*, 152 F.3d 514, 520 (6th Cir. 1998)). "The arbitrary-and-capricious standard, however, does not require [the Court] merely to rubber stamp the administrator's decision." *Jones v. Metro. Life Ins. Co.*, 385 F.3d 654, 661 (6th Cir. 2004) (citing *McDonald v. W.-S. Life Ins. Co.*, 347 F.3d 161, 172 (6th Cir. 2003)). Instead, "a decision will be upheld 'if it is the result of a deliberate principled

16

reasoning process, and if it is supported by substantial evidence.'" *Evans*, 434 F.3d at 876 (internal quotations omitted) (quoting *Killian*, 152 F.3d at 520). This requires the reviewing court to weigh "the quality and quantity of the medical evidence and the opinions on both sides of the issues." *McDonald,* 347 F.3d at 172.

The parties previously stipulated that the "denial of Plaintiff's claim for benefits should be reviewed under the arbitrary and capricious standard of review." *Stipulation Regarding Standard of Review*, ¶ 3. Following remand, the parties again agree that this is the appropriate standard of review. *See*, *e.g.*, *Plaintiff's Motion*, *PAGEID* 1768; *Defendant's Motion*, *PAGEID* 1785.

## VI.  Discussion

"ERISA was enacted to promote the interests of employees and their beneficiaries in employee benefit plans, and to protect contractually defined benefits." *Bruch*, 489 U.S. at 113 (internal quotation marks and citations omitted). "The Act furthers these aims in part by regulating the manner in which plans process benefits claims." *Black & Decker Disability Plan*, 538 U.S. at 830. Every plan must

> (1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and

> (2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

17

29 U.S.C.A. § 1133.  *See also Black & Decker Disability Plan*, 538 U.S. at 830.

In the case presently before the Court, the initial written notice of denial of benefits "did not indicate that the medical evidence proffered by plaintiff was actually reviewed, nor did it indicate whether or why the assessments of Dr. Wolf or Ms. Harris were rejected." *Opinion and Order*, ECF No. 23, p. 14.  Without some explanation, the Court was unable to determine whether the initial denial of benefits was the result of a "deliberate principled reasoning process" or that the Plan provided plaintiff with "specific reasons" for the denial of benefits.  *Id*. at 16-17.  The Court therefore remanded this action to the TPA "to conduct a full and fair review and to issue a decision that reflects a deliberate and principled reasoning process."  *Id*. at p. 17.

Defendant takes the position that the TPA performed a full and fair review and that the deficiencies previously identified by this Court have been remedied. *Defendant's Motion*, *PAGEID* 1786-97.  *See also Defendant's Response in Opposition to Plaintiff's Second Motion*, ECF No. 48 ("*Defendant's Opposition*"), *PAGEID* 1834-40.  Plaintiff contends, however, that the TPA's decision to deny benefits following remand was arbitrary and capricious for a number of reasons. *Plaintiff's Motion*, *PAGEID* 1768-78.  *See also Plaintiff's Memorandum in Opposition to Defendant's Second Motion*, ECF No. 47 ("*Plaintiff's Opposition*"), *PAGEID* 1822-24.

18

### A.    The TPA's Review Period

Plaintiff first contends that the TPA unreasonably limited its review period and improperly excluded relevant evidence. *Plaintiff's Motion*, *PAGEID* 1769-70; *Plaintiff's Opposition*, *PAGEID* 1822-24.  In the written notice denying plaintiff's claim for benefits following remand, the TPA advised that "we have completed our review of your client's appeal for the denial of her claim for short term disability (STD) benefits for the time period of October 31, 2012 through February 04, 2013." *A.R. II PAGEID* 1619.  The TPA further advised that "[a]ll of the documentation received was reviewed in the appeals process but only the relevant medical was considered for the disability time period of October 31, 2012 through February 04, 2013." *Id*. Defendant responds that it was plaintiff herself who limited the original time frame of her claim.  She applied for benefits on October 31, 2012, stating that she would be out of work "through the end of the year;" she never indicated that she was disabled after "early January." *Defendant's Opposition*, *PAGEID* 1834-36.  Defendant also notes that plaintiff had the opportunity to toll her case in order to be seen by specialists and to submit additional evidence, but that she failed to do so.  *Id*. at *PAGEID* 1835-36. According to defendant, "[m]ost of the medical records submitted were outside the relevant time frame or for unrelated issues." *Defendant's Motion*, *PAGEID* 1789. Plaintiff complains that the TPA appeared to distinguish between the evidence that was "reviewed" and the evidence that was "considered," and suggests that relevant post-disability evidence was not

considered. *Plaintiff's Motion*, *PAGEID* 1769-70; *Plaintiff's Opposition*, *PAGEID* 1822-24.

Medical evidence developed after the applicable benefit period "is relevant, but only to the extent that it sheds light on a claimant's condition during" the benefit period at issue. *Hayden v. Martin Marietta Materials, Inc. Flexible Benefits Program*, 763 F.3d 598, 605 (6th Cir. 2014). "'The primary benefit of such evidence' is that it 'speaks to the credibility and accurateness of the earlier evaluations and opinions.'" *Id.* (quoting *Javery v. Lucent Techs., Inc. Long Term Disability Plan for Mgmt. or LBA Emps.*, 741 F.3d 686, 690 n.1 (6th Cir. 2014)).

In the case presently before the Court, plaintiff specifically contends that evidence that she was "in tears" because of pain and that certain post-disability medical evidence from October 2013 and throughout 2014 is relevant to Dr. Wolf's opinion and Ms. Harris's December 2012 assessment. *Plaintiff's Motion*, *PAGEID* 1769. Plaintiff specifically points to two earlier diagnoses of fibromyalgia and two in-person psychiatric evaluations as evidence "of unquestioned relevance," *id.* at *PAGEID* 1770, and argues that the TPA acted arbitrarily and capriciously in ignoring this evidence. *Id.* at *PAGEID* 1769-70. Plaintiff's arguments are not well-taken.

Even assuming the relevance of this evidence, the Court cannot say that the TPA disregarded this evidence. As noted *supra*, the TPA stated that "[a]ll of the documentation received was reviewed." *A.R. II PAGEID* 1619. Although plaintiff makes much of the TPA's word

20

choice in stating that it "considered" "only the relevant medical [evidence] . . . for the disability time period of October 31, 2012 through February 04, 2013[,]" the Court is not persuaded that this language establishes that the TPA disregarded medical evidence dated before and after the benefits period.[3]  For example, defendants' reviewing physicians, Drs. Taff and Kaplan, received for review many medical records generated outside the benefits period.  *A.R. II PAGEID* 1600-06, 1612-18.  Notably, Dr. Taff specifically referenced medical care prior to the relevant period, *A.R. II PAGEID* 1595-97, and Dr. Kaplan referred to medical evidence dated both before and after the relevant period, *A.R. II PAGEID* 1607-10.  In denying plaintiff's claim for benefits, the TPA specifically relied on the reports of these doctors.  *A.R. II PAGEID* 1621.  Based on this record, the Court is not persuaded that the TPA acted arbitrarily or capriciously by disregarding relevant medical evidence that was dated outside the relevant benefits period.

**B.    The TPA's adoption of its reviewers' opinions**

Plaintiff next contends that the TPA's adoption of the opinions of its reviewers, Drs. Taff and Kaplan, was unreasonable.  *Plaintiff's Motion*, *PAGEID* 1770-74; *Plaintiff's Opposition*, *PAGEID* 1829.  The Court shall address each reviewer in turn.

---

[3] To the extent that plaintiff contends that the TPA improperly disregarded the Social Security's decision that was issued after the TPA's denial of plaintiff's claim for short-term disability benefits, that issue is addressed *infra*.

21

### 1.  Dr. Taff

Plaintiff first complains that reliance on the report of Dr. Taff, a board certified psychiatrist, is flawed because he performed only a review of the file, which is often an invalid basis upon which to base a mental health decision.  *Plaintiff's Motion*, *PAGEID* 1771. Plaintiff's argument is well-taken.

"[R]eliance on a file review does not, standing alone, require the conclusion that [the plan administrator] acted improperly[.]" *Calvert v. Firstar Fin., Inc.*, 409 F.3d 286, 295 (6th Cir. 2005). Indeed, there is "nothing inherently objectionable about a file review by a qualified physician in the context of a benefits determination." *Id.* at 296.  However, when a plan administrator relies on file reviews, rather than on a physical examination, that decision is a factor that a court may consider when determining if the administrator acted in an arbitrary and capricious manner.  *Kalish v. Liberty Mut./Liberty Life Assur. Co. of Boston*, 419 F.3d 501, 508 (6th Cir. 2005); *Rose v. Hartford Fin. Servs. Grp., Inc.*, No. 07-5423, 268 F. App'x 444, at *450 (6th Cir. Mar. 11, 2008).  More specifically, "file reviews are questionable as a basis for identifying whether an individual is disabled by mental illness." *Javery v. Lucent Techs., Inc. Long Term Disability Plan for Mgmt. or LBA Employees*, 741 F.3d 686, 702 (6th Cir. 2014).  This is because, unlike other medical professionals, psychiatrists rely on subjective symptoms to treat the patient's mental health condition:

> Courts discount the opinions of psychiatrists who have
> never seen the patient for obvious reasons.  Unlike
> cardiologists or orthopedics, who can formulate medical
> opinions based upon objective findings derived from
> objective clinical tests, the psychiatrist typically treats
> his patient's subjective symptoms. . . . [W]hen a
> psychiatrist evaluates a patient's mental condition, "a lot
> of this depends on interviewing the patient and spending
> time with the patient," . . . a methodology essential to
> understanding and treating the fears, anxieties,
> depression, and other subjective symptoms the patient
> describes.

*Smith v. Bayer Corp. Long Term Disability Plan*, Nos. 06-6136, 06-6468,
275 F. App'x 495, at *508 (6th Cir. Apr. 24, 2008) (internal quotation
marks and citations omitted).  *See also James v. Liberty Life Assur.
Co. of Boston*, No. 13-2625, 582 F. App'x 581, 589 (6th Cir. Sept. 4,
2014) ("Unlike most doctors . . . a psychiatrist must treat a
patient's subjective symptoms by interviewing the patient and spending
time with the patient so as to understand and treat the subjective
symptoms described by the patient.").  It follows that "reliance on a
file review is inappropriate where a claims administrator disputes the
credibility of a claimant's complaints." *Javery*, 741 F.3d at 702.

Courts in this district and other district courts within this
circuit have concluded that a plan administrator acts arbitrarily and
capriciously when it relies on only file reviews to deny a claim for
disability benefits based on mental illness.  *See*, *e.g.*, *Haning v.
Hartford Life & Accident Ins. Co.*, No. 2:14-CV-308, 2015 WL 5729342,
at *12 (S.D. Ohio Sept. 30, 2015), *appeal dismissed* (Dec. 1, 2015)
("Thus, without ever examining Haning, and in the face of directly
conflicting evidence from her therapist, Dr. Givens concluded that she

23

could return to work immediately.  This approach adds to the evidence that Hartford's decision was arbitrary and capricious."); *Rohr v. Designed Telecommunications, Inc*., No. 2:08-CV-345, 2009 WL 891739, at *10 (S.D. Ohio Mar. 30, 2009) ("Plaintiff's treating therapist specifically concluded that her depression prevented her from engaging in the required duties of her position . . .[the defendant insurer's] rejection of these opinions, adds to the evidence before this Court that its termination of Plaintiff's disability benefits was arbitrary and capricious."); *Allen v. AT & T Disability Income Program*, No. 3:08-CV-884, 2009 WL 2366418, at *14 (M.D. Tenn. July 29, 2009) ("[The claims administrator's] dependence on the mental health evaluations provided by non-treating physicians was unreasonable, especially considering that it had the option to order an independent medical examination.").

Similarly, in the case presently before the Court, the TPA relied on a file review when it denied plaintiff's claim for benefits even though Ms. Harris, plaintiff's treating therapist, noted that plaintiff suffered from major depression and anxiety and plaintiff reported symptoms consistent with panic disorder.  *A.R. I PAGEID* 270. Ms. Harris reported that these symptoms disrupted plaintiff's sleep and interfered with her ability to safely drive a car and to sustain concentration for any length of time.  *Id*.  Ms. Harris also suggested that plaintiff's medications may decrease her ability to function at her usual high level of competency.  *Id*.  Ms. Harris went on to note that plaintiff "is hopeful that once her medications are adjusted

properly and if she is able to attend counseling session, that she would be able to begin working again in early January." *Id*. In the face of this contrary evidence and without examining plaintiff, Dr. Taff nevertheless concluded that plaintiff is able to work. *A.R. II PAGEID* 1621. This fact tends to suggest that the TPA's denial of plaintiff's application for disability benefits was arbitrary and capricious. *See*, *e.g.*, *Javery*, 741 F.3d at 702; *Haning*, 2015 WL 5729342, at *12; *Rohr*, 2009 WL 891739, at *10; *Allen*, 2009 WL 2366418, at *14.

Plaintiff next contends that Dr. Taff's report reveals evidence of "cherry-picking." *Plaintiff's Motion*, *PAGEID* 1771-72. "[P]lan administrators may not engage in a 'selective review of the administrative record' . . . by ignoring evidence of disability or giving undue weight to evidence favoring denial[.]" *Godmar v. Hewlett-Packard Co.*, No. 15-1480, 2015 WL 8290186, at *5 (6th Cir. Dec. 9, 2015) (internal citations omitted). "Cherry-picking" undermines a deliberate or principled process: "When an administrator 'focus[es] on slivers of information that *could* be read to support a denial of coverage and ignore[s] — without explanation — a wealth of evidence that directly contradict[s] its basis for denying coverage,' the administrator's 'decision-making process is not deliberate or principled.'" *Id*. (quoting *Metro. Life Ins. Co. v. Conger*, 474 F.3d 258, 265 (6th Cir. 2007)(emphasis in original).

In the case presently before the Court, Dr. Taff summarized Dr. Fettman's psychiatric exam as follows:

> On 08/14/2011, the claimant underwent a psychiatric
> examination by Dr. Mark Fetterman (Psychiatrist).[4] Mental
> status examination noted the claimant was alert and
> oriented times three; pleasant and cooperative; had no
> hallucinations or delusions; felt dysphoric and depressed;
> denied suicidal ideation and had no thought disorders. Dr.
> Fetterman opined the claimant had a mood disorder secondary
> to physical illness.

*A.R. II PAGEID* 1597. Plaintiff contends that Dr. Taff engaged in

"cherry-picking" because he omitted from this summary Dr. Fettman's

opinion that plaintiff's mental illness rendered her disabled.

*Plaintiff's Motion*, *PAGEID* 1772 (citing *A.R. II PAGEID* 719) ("[T]he

patient has a Mood Disorder secondary to physical illness and I feel

that she is disabled currently from doing her job."). Defendant

disagrees, arguing that plaintiff "makes too much of" Dr. Fettman's

report, which was issued more than one year prior to the relevant time

period. *Defendant's Opposition*, *PAGEID* 1838. Yet Dr. Taff apparently

regarded Dr. Fettman's report as relevant because he discussed it and

yet, in doing so, Dr. Taff ignored evidence of plaintiff's disability

and highlighted evidence favoring a denial of benefits, *i.e.*, that

plaintiff was alert and oriented, did not suffer from hallucinations

or delusions, and denied suicidal ideation. The fact that Dr.

Fettman's report was issued prior to the relevant time period does not

explain Dr. Taff's disregard of Dr. Fettman's opinion of disability.

This omission is another factor suggesting that the TPA's decision was

not the result of a deliberate or principled decision-making process.

*Godmar*, 2015 WL 8290186, at *5.

---

[4] Dr. Taff refers to Dr. "Fetterman," but the correct spelling is "Fettman."
*See*, *e.g.*, *A.R. II PAGEID* 721.

Plaintiff also argues that Dr. Taff improperly focused on "slivers of information" in Dr. Davis's report that could be read to support the TPA's denial of coverage. *Plaintiff's Motion*, *PAGEID* 1772. In addressing Dr. Davis's report, Dr. Taff, *inter alia*, noted:

> On 07/29/2011, the claimant underwent a psychological evaluation by Dr. David Davis,[5] PhD, ABPP (Psychologist). The claimant provided a history of treatment for depression dating back to 2002 when Wellbutrin was prescribed. She reported on her medical issues and history of fibromyalgia and back pain. . . . Affect was appropriate and reactive to a stated generally anxious and chronically depressed state. . . . Social interaction was friendly and cooperative. There was no evidence of hallucinations, delusions or psychosis. There were no problems with attention and concentration. The claimant was not distractible and was oriented to person, place, time and situation. Her fund of knowledge indicated average intellectual function. Short and long term recall was adequate and the claimant had capacity for abstract verbal reasoning. Insight and judgment were adequate.

*A.R. II PAGEID* 1596-97.

Plaintiff complains that Dr. Taff made no mention of "the ample evidence of depression, anxiety and anger" in Dr. Davis' report. *Plaintiff's Motion*, *PAGEID* 1772 (citing *A.R. II PAGEID* 1597). Defendant disagrees, again arguing that the report was issued more than one year prior to the relevant time period. *Defendant's Opposition*, *PAGEID* 1838. Again, this Court is unpersuaded by this argument because Dr. Taff considered and relied on Dr. Davis's report in reaching his conclusion.

Defendant also attempts to distinguish this case from *Godmar* because Dr. Davis expressed no opinion as to plaintiff's disability

---

[5] The record indicates that Dr. Davis' first name is Daniel. *A.R. II PAGEID* 702.

and reported unremarkable examination findings as well as evidence that plaintiff's responses may not be credible. *Id.* at *PAGEID* 1838-39. However, it is clear that Dr. Taff failed to address other evidence in Dr. Davis' report that could support a conclusion of disability, namely, evidence of plaintiff's depression, stress, and anger. *A.R. II PAGEID* 712-14, 1596-98.

Plaintiff also properly challenges Dr. Taff's dismissal of Ms. Harris's report as not "describ[ing] how any of [plaintiff's] self-reported symptoms of depression would directly and adversely impact her ability to do her normal work-related activities," *A.R. II PAGEID* 1598, in light of her observation that plaintiff's "symptoms are causing her to be unable to receive adequate sleep, safely drive a car or sustain focus/concentration for any length of time." *A.R. I PAGEID* 270.

In short, Dr. Taff's selective review of the record lends support to plaintiff's contention that the TPA's decision to deny benefits was not the result of a deliberate or principled decision-making process. *See Godmar*, 2015 WL 8290186, at *5.

### 2.  Dr. Kaplan

Plaintiff also criticizes the TPA's reliance on Dr. Kaplan, a board certified physical medicine and rehabilitation specialist, because he is a professional file reviewer. *Plaintiff's Motion*, *PAGEID* 1772-73. As discussed *supra*, "reliance on a file review does not, standing alone, require the conclusion that [the plan administrator] acted improperly[.]" *Calvert v. Firstar Fin., Inc.*,

28

409 F.3d 286, 295 (6th Cir. 2005).  Accordingly, Dr. Kaplan's status as a file reviewer, by itself, is not evidence that the TPA acted arbitrarily or capriciously when it relied on his opinion.

Plaintiff also contends that Dr. Kaplan improperly questioned the credibility of plaintiff's complaints of pain when he noted that her presentation was "essentially subjective[.]"  *Plaintiff's Motion*, *PAGEID* 1773.  This Court agrees.  Dr. Kaplan's report includes the following:

> Regarding fibromyalgia, this claimant has been noted to have multiple tender points, but without any impairing limitations of gait, range of motion, or strength. Numerous exams, including that of Dr. Antonchak of 12/03/2010 and Dr. Y Reddy from 05/08/2012 through 10/27/2014 note reports of pain with some postural activities, but not impairing neurological or musculoskeletal findings on examination.  The claimant was noted to have mild discogenic disease and mild facet arthropathy on MRI imagining of the lumbar spine reviewed at emergency room visit of 02/01/2012; these are age-typical and not functionally limiting findings.  Overall, from a physical medicine and rehabilitation perspective, the claimant's presentation is essentially subjective, with no clear neurological or muscular impairing findings.

*A.R. II PAGEID* 1610-11.

"[R]eliance on a file review is inappropriate where a claims administrator disputes the credibility of a claimant's complaints." *Javery v. Lucent Techs., Inc. Long Term Disability Plan for Mgmt. or LBA Emps.*, 741 F.3d 686, 702 (6th Cir. 2014).  *See also Zuke v. Am. Airlines, Inc.*, No. 15-3465, 2016 WL 1258220, at *5 (6th Cir. Mar. 31, 2016) ("This Court has already recognized the arbitrary nature of a reviewing physician's determination about a claimant's pain."); *Godmar,* 2015 WL 8290186, at *9 ("File reviews are particularly

troubling when the administrator's consulting physicians — who have
never met the claimant — discount the claimant's limitations as
subjective or exaggerated."). Absent an examination, a plan should
not make a credibility determination about a plaintiff's reports of
pain even under an objective-evidence standard. *Shaw v. AT&T Umbrella
Ben. Plan No. 1*, 795 F.3d 538, 550 (6th Cir. 2015) ("Because chronic
pain is not easily subject to objective verification, the Plan's
decision to conduct only a file review supports a finding that the
decision-making was arbitrary and capricious."); *Godmar*, 2015 WL
8290186, at *10 (citing *Shaw*, 795 F.3d at 550). "In the context of a
claimant with self-reported symptoms, the plan administrator must
follow a reasonable procedure in deciding the issue." *Zenadocchio v.
BAE Sys. Unfunded Welfare Ben. Plan*, 936 F. Supp. 2d 868, 890 (S.D.
Ohio 2013).

In the case presently before the Court, Dr. Kaplan questioned
plaintiff's complaints regarding the debilitating impact of her
fibromyalgia; he noted reports of pain but found no impairing
neurological or musculoskeletal findings. *A.R. II PAGEID* 1610. His
credibility determination therefore appears to be based on the lack of
physical findings "without taking reasonable measures to decide the
issue, such as conducting an in-person examination." *See Zenadocchio*,
936 F. Supp. 2d at 891. This Court does not suggest that defendant
was required to perform an in-person examination. *See id.* However,
the TPA's "decision in regard to [plaintiff's] 'self-reported
symptoms' does not reflect deliberative, principled reasoning, but

instead weighs towards the Court's conclusion that [the TPA's] decision to terminate was arbitrary and capricious." *Id. See also Zuke*, 2016 WL 1258220, at *5. *See also Holler v. Hartford Life & Acc. Ins. Co.*, 737 F. Supp. 2d 883, 891 (S.D. Ohio 2010), opinion clarified on denial of reconsideration (Nov. 22, 2010) (noting that, with fibromyalgia, "physical examinations will usually yield normal results — a full range of motion, no joint swelling, as well as normal muscle strength and neurological reactions").

### 3. Failure to consider the requirements of plaintiff's job

Drs. Taff and Kaplan found no mental or physical condition that affected plaintiff's ability to perform the essential functions of her job. *A.R. II PAGEID* 1599, 1611. However, nowhere in their reports is there an analysis of the essential responsibilities of plaintiff's job as a Provisioning Specialist. This failure does not reflect deliberative, principled reasoning and adds to the evidence that defendant's decision to deny benefits was arbitrary and capricious. *Javery v. Lucent Techs., Inc. Long Term Disability Plan for Mgmt. or LBA Emps.*, 741 F.3d 686, 702 (6th Cir. 2014) (collecting cases). *See also Hunter v. Life Ins. Co. of N. Am.*, No. 10-1244, 437 F. App'x 372, at *377 n.3 (6th Cir. June 29, 2011) ("However, mere mention of Hunter's job description, without analysis, is insufficient to demonstrate that these physicians actually considered Hunter's ability to perform the physical demands of her prior occupation."); *Elliott v. Metro. Life Ins. Co.*, 473 F.3d 613, 619 (6th Cir. 2006) ("[T]here is

no indication that MetLife reasoned from Elliott's condition to her ability to perform her occupation. . . . Instead, the denial letter is a mere recitation of medical terminology employed by various physicians in their diagnoses of Elliott's condition, without any reasoning as to why those diagnoses would permit her to function in the workplace."); *Zenadocchio,* 936 F. Supp. 2d at 892 ("Hartford did not properly consider the entire scope of Zenadoccio's essential duties of her position in accordance with her limitations.").

C.  **The TPA's rejection of the opinions of plaintiff's physicians**

Plaintiff next argues that the TPA's denial was arbitrary and capricious because it rejected, without reason, the opinions of plaintiff's physicians. *Plaintiff's Motion*, *PAGEID* 1774-75; *Plaintiff's Opposition*, *PAGEID* 1825-28. Plaintiff specifically contends that the TPA's discussion of the medical evidence "is, for the most part, a recitation of medical data without reasoning," *id*. at *PAGEID* 1774 (citing *Kennard v. Means Indus., Inc*., No. 13-1911, 555 F. App'x 555, at *557 (6th Cir. Feb. 13, 2014) ("Bare recitations of medical data, without reasoning, cannot produce a logical judgment about a claimant's work ability.") (internal citations and quotation marks omitted)). However, this Court cannot agree the TPA's denial letter constitutes a bare recitation of medical data, without reasoning.

Plaintiff also complains that Drs. Taff and Kaplan improperly ignored the reports of plaintiff's treating providers that plaintiff's

32

many medications, including Wellbutrin, Cymbalta, Trazodone, and Klonopin, *A.R. I PAGEID* 293, impaired her ability to work. *See A.R. II PAGEID* 1599 ("There is no evidence of side effects from any medication that would impair her ability to do her job."), 1611 ("There is no documented titration of medications due to side effects and no documented impairment of the claimant's ability to perform her job due to medication usage."). This Court agrees.

In a report following his August 8, 2011,[6] examination of plaintiff, Dr. Fettman opined that plaintiff's medications, combined with her physical illness, would make it "impossible for her to work in an effective manner because these medications are sedating." *A.R. II PAGEID* 719. Ms. Harris reported on December 20, 2012, that plaintiff's "current medications may be decreasing her ability to function at her usual high level of competency." *A.R. I. PAGEID* 270. Despite this evidence, Drs. Taff and Kaplan found no evidence that plaintiff's medications impaired her ability to work. *A.R. II PAGEID* 1599. A failure to consider "the number and nature of the medications" a plaintiff is taking may be one factor in determining whether or not a disability determination is arbitrary and capricious. *Smith v. Cont'l Cas. Co.*, 450 F.3d 253, 265 (6th Cir. 2006)). *See also Edwards v. Life Ins. Co. of N. Am.*, No. 3:07-CV-247, 2009 WL 693139, at *16 (E.D. Tenn. Mar. 13, 2009) ("[T]he failure to address the other side effects of Plaintiff Edwards' medications on his ability to function

---

[6] Although Dr. Fettman's report pre-dates the benefits period, Dr. Taff considered this report when reviewing plaintiff's file. *See supra.*

weighs in favor of finding an arbitrary and capricious decision to the extent Defendant LINA relied on Ms. Valentine's review."). *Cf. Zuke*, 2016 WL 1258220, at *4 ("Making factually incorrect assertions in combination with selectively reviewing a claimant's records supports a finding that the plan administrator acted arbitrarily and capriciously.").

**D.    The TPA's refusal to review the Social Security's Administration's decision**

Plaintiff further argues that it was arbitrary and capricious for the TPA to refuse to review the Social Security Administration's decision. *Plaintiff's Motion*, *PAGEID* 1775-78; *Plaintiff's Opposition*, *PAGEID* 1824-25. This Court disagrees. "[A]n ERISA plan administrator is not bound by an SSA [Social Security Administration] disability determination when reviewing a claim for benefits under an ERISA plan." *Whitaker v. Hartford Life & Acc. Ins. Co.*, 404 F.3d 947, 949 (6th Cir. 2005). "[E]ntitlement to Social Security benefits is measured by a uniform set of federal criteria. But a claim for benefits under an ERISA plan often turns on the interpretation of plan terms that differ from SSA criteria." *Id*. However, "the SSA determination, though certainly not binding, is far from meaningless." *Calvert v. Firstar Fin., Inc.*, 409 F.3d 286, 294 (6th Cir. 2005).

As noted *supra*, the TPA refused to reopen its administrative record in order to review the Social Security decision because, *inter alia,* the Social Security decision was "submitted untimely" after the

34

administrative record was closed and approximately one month after the TPA had issued its decision. *A.R. II PAGEID* 1706.

The United States Court of Appeals for the Sixth Circuit has held that, "where a plan administrator has denied a disability claim, a remand to the administrator to consider a contrary SSA determination issued after the administrative decision is unwarranted." *Seiser v. UNUM Provident Corp.*, No. 04-1177, 135 F. App'x 794, at *799 (6th Cir. Apr. 22, 2005). *See also Kouns v. Hartford Life & Acc. Ins. Co*, 780 F. Supp. 2d 578, 590 (N.D. Ohio 2011) (citing *Seiser* and finding "that the favorable Social Security Administration decision in October 2009 is not a relevant factor in determining whether Hartford acted arbitrarily and capriciously in terminating the Plaintiff's disability benefits [in July 2009].").  Thus, the TPA's refusal to consider the decision of the Social Security Administration - issued after the TPA's denial of benefits - is not a factor suggesting the arbitrary and capricious denial of benefits.

**D. Conclusion**

To summarize, the TPA's reliance on file reviews that improperly questioned plaintiff's credibility and which did not sufficiently support the denial of benefits, its rejection of the opinions of plaintiff's treating medical providers, its failure to adequately consider the number and nature of plaintiff's medications, and its failure to consider the specific requirements of plaintiff's job lead to the conclusion that the denial of plaintiff's claim for benefits was arbitrary and capricious.  Stated differently, it was the

"cumulative effect" of these factors, rather than any single factor, that results in a finding that the TPA's decision was arbitrary and capricious. *Zenadocchio*, 936 F. Supp.2d at 885.

When an ERISA plan administrator's decision to deny benefits is found to be arbitrary and capricious, courts may either award benefits to the claimant or remand the matter to the plan administrator for further action or consideration. *Elliott,* 473 F.3d at 621 (citing *Smith,* 450 F.3d at 265). "Remand to the plan administrator is appropriate where the problem is with the integrity of the plan's decision-making process, rather than that a claimant was denied benefits to which he was clearly entitled." *Hayden,* 763 F.3d at 607. Here, the record does not clearly establish that plaintiff is entitled to benefits; instead, there were deficiencies in the TPA's decision-making process. Accordingly, remand to the TPA for further proceedings is appropriate.

Accordingly, *Plaintiff's Second Motion for Judgment on the Administrative Record*, ECF No. 45, is **GRANTED**, and *Defendant's Motion for Judgment on the Administrative Record*, ECF No. 46, is **DENIED**. This matter is hereby **REMANDED** to the TPA to conduct a full and fair review and to issue a decision that reflects a deliberate and principled reasoning process.

The Clerk is **DIRECTED** to enter final judgment.

April 25, 2016                                  *s/Norah McCann King*_____
                                               Norah M<sup>c</sup>Cann King
                                        United States Magistrate Judge

36